Filed 12/28/15  Belken v. Belken CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ERIN DAWN BELKEN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CASEY BELKEN, <br><br> Defendant and Respondent. | A143159 <br><br> (Alameda County <br> Super. Ct. No. HG14717123) |

Erin Dawn Belken (wife) appeals from an order sustaining a demurrer to her first amended complaint and dismissing the action.[1]  She contends that her first amended complaint states a viable cause of action for intentional and negligent infliction of emotional distress.  We disagree and affirm.

## I.  FACTS

On March 10, 2014, wife filed a complaint seeking damages from Casey Belken (husband) for intentional infliction of emotional distress.[2]  Wife alleged:

The parties used husband's computer to store family photographs and utilized a photo and video storing program called Picasa.  Wife also used husband's computer because it had internet access.  In June 2012, the parties were having marital troubles and

---

[1] We construe wife's notice of appeal liberally in favor of its sufficiency and interpret it as being from a judgment of dismissal.  (See *Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1353, fn. 5.)

[2] The parties also have a marital dissolution case pending in Alameda County, Case No. HF12641864.

were attending marital counseling. At the June 11, 2012 marital counseling session, husband demanded that wife move out of the marital home. When wife returned home, she logged onto husband's computer and opened the Picasa program. She found photographs and videos of defendant and another woman having unprotected sexual relations. Wife recognized the woman as someone with whom husband had a business relationship. Wife became extremely upset and had difficulty breathing upon seeing the photographs and videos. She called her neighbor, who came over to her house and also became agitated and emotional upon seeing the videos on the computer.

About a month later, wife went to her doctor, who prescribed two types of antibiotics after seeing screen shots of the videos. Wife suffered an adverse reaction to one of the antibiotics and had to have steroid injections. She suffered constant anxiety for three to four weeks until she was told she did not have a sexually transmitted disease.

Husband should have known that wife would see the videos, and that his act of downloading the videos onto the computer was extreme and outrageous. As a result, she suffered severe humiliation, mental anguish, and emotional and physical distress. She also suffered damages in the cost of therapy and medical treatment.

Husband demurred to the complaint on May 6, 2014 on the ground that the allegations in the complaint failed to state a cause of action because they did not amount to extreme, outrageous conduct or exceed all possible bounds of decency.

On June 9, 2014, wife filed a first amended complaint.[3] She repeated the same allegations as her original complaint but added that husband had threatened that if she did not move out of their home, he would make her life miserable. Wife felt that she had no choice but to move out because husband had started to break and hide her belongings and throw things at her. She further alleged that the videos and photographs that husband downloaded onto the computer spanned a period of several months. Wife also alleged

---

[3] On July 7, 2014, the court dropped the demurrer to the complaint from the calendar in light of the filing of the first amended complaint.

2

that husband had the locks changed on the house they shared, forcing her to stay in a hotel.

Wife alleged that in addition to her anxiety over possible exposure to a sexually transmitted disease, she also feared that she had may have contracted HIV and continued in emotional distress for a period of six months when her doctor did a follow-up test. Wife claimed that husband should have known that she would suffer severe humiliation and emotional distress as a result of seeing the videos on the computer. Husband knew of her fragile emotional state through their therapy sessions and he breached his fiduciary duty to her by changing the locks on the house.

Wife also alleged a cause of action for negligent infliction of emotional distress, asserting that husband breached a duty to exercise due care towards her and that he breached that duty by engaging in an intentional and dishonest course of conduct calculated to cause her extreme mental distress.

Husband demurred to the first amended complaint, contending that the allegations failed to state a cause of action.

Wife opposed the demurrer, arguing that her request for spousal support in the dissolution proceeding had no affect on the present action and that the allegations of the first amended complaint were not repetitive of any made in the dissolution action. She also requested that the court take judicial notice of her request for spousal support and her declaration that were filed in the dissolution proceeding.

The trial court sustained the demurrer without leave to amend, finding that it was improper for wife to raise disputes for damages that were or could be resolved in the dissolution action. The court reasoned that the courts look with disfavor on civil actions which are nothing more than a reframing of a family law case.

## II. DISCUSSION

When an appeal arises after the sustaining of a demurrer, we "assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn therefrom." (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 789, fn. 3.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions,

3

deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.]' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) When the court has sustained a demurrer without leave to amend, we must decide whether "there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The burden of proof that an amendment would cure the defect is on the appellant. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

Relying on *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262 (*Nagy*), wife argues that she can use the civil courts to assert her claim of emotional distress against husband. Her reliance on *Nagy* is misplaced. In *Nagy,* the appellate court upheld the trial court's order dismissing a complaint for intentional infliction of emotional distress and fraud which was based on the allegation that the wife misrepresented the parentage of her son to the husband leading him to believe he was the father. (*Id.* at pp. 1265–1267.) While the court recognized that under California law, one can sue a spouse for an intentional tort (*Self v. Self* (1962) 58 Cal.2d 683, 691), the court held that the husband could not sue his wife for fraud because there was no law permitting a person to recover damages for developing a relationship with a child and performing the acts of a parent. (*Nagy, supra,* at pp. 1268–1269.) The court recognized that there are many wrongs for which the law does not provide a remedy: " 'It does not lie within the power of any judicial system . . . to remedy all human wrongs. There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of the feelings of others are beyond any effective legal remedy and any practical administration of law. [Citation.]' " (*Id.* at p. 1269, quoting *Stephen K. v. Roni L.* (1980) 105 Cal.App.3d 640, 642–643 (*Stephen K.*).)

As the *Nagy* court recognized, allegations of betrayal and heartless disregard of the feelings of others, which are essentially the allegations here, are not ones for which the courts provide redress. (*Nagy, supra,* 210 Cal.3d at p. 1269.) "The California anti-

heart-balm statues which long ago did away with breach of promise actions establish a public policy against litigation of the affairs of the heart." (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 947 (*Askew*); Civ. Code, § 43.5, subd. (a) [no cause of action lies for alienation of affection].) Although wife does not allege a breach of promise claim, she is arguing that she is entitled to damages because husband's actions in having an affair— and exposing her to explicit videos of the affair—caused her emotional distress. The law does not provide for redress over the circumstances in which wife learned of the affair. (*Ibid.*; see *Perry v. Atkinson* (1987) 195 Cal.App.3d 14, 19 [in enacting Civil Code section 43.5, the Legislature recognized that "certain sexual conduct and interpersonal decisions are, on public policy grounds, outside the realm of tort liability"].)

In *Stephen K.,* Roni and her child brought a paternity suit against Stephen. After admitting paternity, Stephen cross-complained for fraud and negligence. He alleged that Roni falsely represented she was taking birth control pills and, in reliance on that representation, Stephen had sexual intercourse with Roni, resulting in her becoming pregnant and having Stephen's child. (*Stephen K., supra*, 105 Cal.App.3d at pp. 641– 642.) Stephen also alleged that due to Roni's misrepresentation, he had become obligated to support a child he did not want, and had suffered " 'mental agony and distress.' " (*Id*. at p. 642.) The court concluded that the facts alleged were not actionable. "Claims such as those presented by plaintiff Stephen in this case arise from conduct so intensely private that the courts should not be asked to nor attempt to resolve such claims. . . . [A]lthough Roni may have lied and betrayed the personal confidence reposed in her by Stephen, the circumstances and the highly intimate nature of the relationship wherein the false representations may have occurred, are such that a court should not define any standard of conduct therefor." (*Id.* at p. 643.)

In support of its reasoning the court pointed to *Stanley v. Georgia* (1960) 394 U.S. 557, 564, a case in which the Supreme Court held the state could not criminalize mere possession of pornography in one's own home. "In *Stanley v. Georgia* [], the high court recognized the right to privacy as the most comprehensive of rights and the right most valued in our civilization. Courts have long recognized a right of privacy in matters

relating to marriage, family and sex. [Citations.]" (*Stephen K., supra*, 105 Cal.App.3d at p. 645.) The court concluded that Stephen could not sue in tort for Roni's misrepresentation because "it is nothing more than asking the court to supervise the promises made between two consenting adults as to the circumstances of their private sexual conduct. To do so would encourage unwarranted governmental intrusion into matters affecting the individual's right to privacy." (*Id.* at pp. 644–645.)

Similarly, in this case, the courts should not be asked to define a standard of conduct for a married couple regarding the disclosure of sexually explicit or even adulterous pictures or videos from one to the other. Marital relationships, and in particular marital sexual relationships, are intensely private and concern matters we must avoid to prevent "unwarranted governmental intrusion." (*Stephen K.*, *supra*, 105 Cal.App.3d at p. 645.)

Wife further argues, citing *Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603 (*Boblitt*), that the trial court erred in finding that the issues she raised could be considered in the pending dissolution proceeding. Here, the court correctly ruled that it was improper for wife to raise claims seeking damages for medical and living expenses, and loss of access to the marital home as these issues could be resolved in the dissolution action.

The *Boblitt* court held that a party was not precluded from seeking damages for the tort of domestic violence (see Civ. Code, § 1708.6) in a civil action while also asking a family law court to consider the facts of domestic violence in awarding spousal support. (*Id.* at pp. 606, 613.) The tort of domestic violence, however, is a creature of statute, and the law specifically prescribes that the "rights and remedies provided in this section [to recover damages in tort] are in addition to any other rights and remedies provided by law." (Civ. Code, § 1708.6, subd. (d).) Moreover, domestic violence is not an intensely private matter; it is a matter of public safety for which the courts can and should define standards of conduct. *Boblitt* is therefore inapposite.

Wife also cites the declaration she submitted in support of her request for spousal support in the dissolution action as evidence in this action. The court denied her motion for judicial notice of the declaration. "For a court to take judicial notice of the meaning

6

of a document submitted by a demurring party based on the document alone, without allowing the parties an opportunity to present extrinsic evidence of the meaning of the document, would be improper.  A court ruling on a demurrer therefore cannot take judicial notice of the proper interpretation of a document submitted in support of the demurrer.  [Citations.]  In short, a court cannot by means of judicial notice convert a demurrer into an incomplete evidentiary hearing in which the demurring party can present documentary evidence and the opposing party is bound by what that evidence appears to show." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114–115.)  Hence, it would have been improper for the court to take judicial notice of matters averred in wife's declaration pertaining to her work schedule, mental distress, medical appointments, and personal possessions left in the marital home, which were all subjects in dispute in the dissolution proceeding.  (*Id.* at pp. 113–114.) " ' "A demurrer is simply not the appropriate procedure for determining the truth of disputed facts." ' " (*Id.* at pp. 113–114, quoting *Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879.)

Finally, wife's argument that the court had the authority to consolidate this action with the dissolution proceeding is without merit.  As we have explained, wife has no basis for pursuing the tort action as she has no redress for husband's intentional or negligent posting of photographs and videos of his extramarital affair on their shared computer.  (See *Askew, supra*, 22 Cal.App.4th at pp. 947, 954.)

## III.  DISPOSITION

The judgment is affirmed.

_____

　　　　　　　　　　　　　　　　　　　　　　　Rivera, J.

We concur:


_____

Reardon, Acting P.J.


_____

Streeter, J.